UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:11-CV-13

TERESA BREEDEN                                                                                    PLAINTIFF

v.

HCA PHYSICIAN SERVICES, INC.
d/b/a SOUTHERN KENTUCKY
NEUROSURGICAL ASSOCIATES; and
SHERRI TAYLOR                                                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant Sherri Taylor's Motion for Summary Judgment (DN 26). Plaintiff Teresa Breeden has filed her response (DN 32), and Defendant has replied (DN 35). These matters are now ripe for adjudication. For the following reasons, Defendant's Motion to for Summary Judgment (DN 26) is GRANTED.

### BACKGROUND

Plaintiff Theresa Breeden ("Breeden") was a Charge Entry Specialist at defendant HCA Physician Services, d/b/a Southern Kentucky Neurological Associates, LLC ("SKNA") until she left that position on September 14, 2009. Defendant Sherri Taylor ("Taylor") was Breeden's supervisor from March 2008 until August 14, 2009, during which time Breeden alleges Taylor sexually harassed her in a variety of ways, including making comments about her own and Breeden's sex lives, sending inappropriate and sexually-themed emails, and making implicit sexual advances toward Breeden.

Breeden was initially reluctant to complain about the harassment because she feared losing her job, in part because Taylor was a "very vindictive person" who commented that the

employees at HCA were replaceable whenever they made complaints. (Pl's Depo. pp. 40-42.) However, Breeden ultimately spoke with Taylor's supervisor, Frank Walton, about Taylor's conduct. On the afternoon of August 13, 2009, Walton informed Taylor of Breeden's accusations by phone. The next morning, Taylor did not return to work, and instead resigned from her position via a phone call with Walton.

After Taylor's resignation until Breeden's own resignation on September 14, 2009, Breeden indicates she was harassed and retaliated against by her co-workers at SKNA. During this month-long period, Taylor remained in contact with SKNA, and Breeden contends, conspired with Breeden's co-workers in the mistreatment. In support of this contention, Breeden notes that following Taylor's resignation, Dr. Charles Wood, a physician at SKNA, hired Taylor in early September to relocate patient records from Georgia to his home in Bowling Green, a task which she performed on September 14, 2009. (Dr. Wood Depo. p. 33; Taylor Depo. p. 26.) The records were not those of patients at SKNA (Dr. Wood Depo. p. 33.), and Dr. Wood personally paid Taylor for the work. (Id. at p. 41.) Prior to moving the files, Taylor called SKNA twice to speak with Dr. Wood about logistics, once leaving a message with Linda Mosley and once leaving a message with Angela Sullivan. (Taylor Depo., pp. 25-25.) Taylor also visited SKNA twice, once to pick up the check from Dr. Wood for moving the files and once with her mother to visit Mosley and Sullivan; however, both of these visits took place after September 14, 2009.

Breeden points to her co-worker Angela Sullivan as the main perpetrator of the retaliation against her. Sullivan says she did not feel she had to be nice to Breeden to do her job and admits she was rude to Breeden and dropped charts on Breeden's desk rather than handing them to her. Sullivan also denies that Taylor encouraged her to mistreat Breeden, indicates she had not "cared for Breeden for a long time … prior to [Taylor's resignation]," and says she disliked Breeden

2

before Taylor's resignation because of unrelated interactions with Breeden. (Depo. of Angela Sullivan, pp. 12, 21-23, 42-45.) SKNA employees Linda Mosley, Frank Walton, Susan Coulter, and Dr. Wood also deny that Taylor requested they mistreat Breeden. (Linda Mosley Depo. p. 60; Frank Walton Depo. pp. 89-91; Susan Coulter Depo. pp. 93-94; Dr. Wood Depo. pp. 44-45.)

Taylor has moved for summary judgment, arguing that based on the undisputed facts, Breeden has not established a *prima facie* case of retaliation against Taylor. In her response, Breeden contends that given Taylor's history of threatening retaliation and "the resentment of the Plaintiff as acknowledged in Ms. Sullivan's deposition," summary judgment is improper because there is an issue of fact as to whether "Ms. Taylor played an integral part in the retaliation suffered by Ms. Breeden during the exact same time that Ms. Taylor was hired by Dr. Wood and in contract with the remaining office employees." (Pl.'s Resp. DN 32).

**STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby,*

3

*Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Kentucky Revised Statute § 344.280(1) makes it an unlawful practice for two or more persons to conspire "to retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter...." A defendant can be held individually liable under section 344.280. *See Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 794 (6th Cir. 2000) ("344.280 forbids retaliation by 'a person.' The Kentucky retaliation statute plainly permits the imposition of liability on individuals."); *Adams v. United Parcel Serv.,* 2006 WL 1687699 at *8 (W.D. Ky. June 19, 2006) (holding that the plain language of section 344.280 "indicates that individuals may be subject to liability for violations of it."). To establish a *prima facie* case of retaliation under KRS 344.280, Plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) her engagement in that protected activity was known to Defendants; (3) Defendants thereafter took an adverse employment action against her; and (4) a causal link between her engagement in the protected activity and the adverse employment action. *Brooks v. Lexington-Fayette Urban County Hous. Auth.,* 132 S.W.3d 790, 801-803 (Ky.2004); *Nguyen,* 229 F.3d at 563 (applying the same standard under Title VII).

In her motion for summary judgment, Taylor contends that there "is a total void of evidence to suggest Defendant Taylor in any way retaliated against Plaintiff." First, Taylor immediately resigned from her position at SKNA, and was therefore no longer Breeden's

4

supervisor during the period of time the alleged retaliation occurred. After Taylor's resignation, her limited contact with SKNA employees consisted of: (1) performing file relocation services for Dr. Wood, who personally hired and compensated her for the work, which involved relocating files unrelated to SKNA patients to Dr. Wood's personal residence; (2) placing two phone calls to Dr. Wood at SKNA to discuss the file relocation project, in which Taylor left messages with Breeden's co-workers Mosley and Sullivan; (3) visiting the SKNA office with her mother to say hello to Mosley and Sullivan; and (4) picking up the check from Dr. Wood compensating her for the file relocation work. According to Taylor's deposition, both of the visits occurred after September 14, 2009, the date on which Breeden resigned from SKNA. Finally, in their respective depositions, SKNA employees Dr. Charles Wood, Susan Coulter, Linda Mosley, Angela Sullivan, and Frank Walton have all denied that Taylor encouraged or requested any retaliatory treatment of Breeden at any point following her resignation.

In response, Breeden points first to Angela Sullivan's deposition testimony indicating that Sullivan was rude and/or hostile to Breeden after Taylor's resignation. Breeden also points to her own deposition testimony stating that Taylor had a vindictive personality and had indicated that employees who complained were replaceable at SKNA. Breeden concludes "[g]iven the totality of the circumstances, particularly the resentment of the Plaintiff as acknowledged in Ms. Sullivan's Deposition," it is "a reasonable conclusion for the jury to reach that Ms. Taylor played an integral part in the retaliation suffered by Ms. Breeden during the exact same time that Ms. Taylor was hired by Dr. Wood and in contact with the remaining office employees."

The Court finds that Taylor is entitled to summary judgment on the remaining count against her. Breeden offers no evidence that Taylor encouraged or participated in any hostile or

retaliatory conduct against her following Taylor's resignation. Instead, Breeden insists that the Court should presume that Taylor "played an integral part in the retaliation" and ignore the deposition testimony of five SKNA employees to the contrary because (1) long before the alleged retaliation in this case, Taylor commented that complaining employees were replaceable and (2) following Taylor's resignation, co-worker Angela Sullivan was hostile toward Breeden and Taylor retrieved medical records for Dr. Wood that were completely unrelated to SKNA. The facts cited in Breeden's response fail to rise above mere speculation. Because Breeden has failed to offer evidence of a material issue of fact as to Taylor's involvement in any alleged retaliation, Taylor's motion for summary judgment must be granted.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant Sherri Taylor's Motion for Summary Judgment is GRANTED.


CC: counsel